# SCHOONER "H. E. THOMPSON" v. MARTIN.

---

ADMIRALTY LAW; PROVISION SCALE, VIOLATION OF.

1. The acts of Congress fixing a scale of provisions to be served to crews of American vessels during a voyage and prescribing a penalty for violations thereof (Sec. 4568 R. S. U. S. as amended by the act of December 21, 1898 and Sec. 4612 R. S. U. S.) are remedial in their nature and should be liberally construed so as to give their humane purpose full and practical effect and cause them to be respected by shipowners and masters.

2. In a libel by seamen to recover compensation for a violation of these acts, proof of a substantial failure by the master to observe the requirements of the law, with such reasonable particularity as to the number of days upon which the scale

was not observed as will enable the court to assess the compensation with reasonable certainty, is sufficient, without showing a failure from day to day, to observe the scale, especially where it appears that during the voyage the master and owner knew, while the seamen were ignorant of, the new scale for the violation of which the latter subsequently libel the vessel.

3. A decree in such a proceeding awarding the libellants additional compensation at 75 cents per day for 195 days out of a voyage of 207 days, *affirmed,* where the testimony showed a substantial departure from the scale during the entire voyage and that for a considerable portion of it the reduction in quantity was more than one-third, and that towards the close of the voyage some of the provisions furnished were bad in quality.

No. 947.  Submitted February 6, 1900.  Decided March 7, 1900.

HEARING on an appeal by the claimant from a decree of the Supreme Court of the District of Columbia in a libel in admiralty.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Nathaniel Wilson* and *Mr. Clarence R. Wilson* for the appellant.

*Mr. E. Hilton Jackson* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree in an admiralty suit, begun in the Supreme Court of the District of Columbia by a libel filed by the appellees against the schooner H. E. Thompson.

Libellants were four sailors of the crew of said schooner engaged under shipping articles, in the port of Boston, dated March 9, 1899.  Their claim is for a balance of wages, and for additional compensation, as provided in Sec. 4568, R. S., for violation of the provisions of Sec. 4612, R. S.

This last section was originally enacted in 1870, and contained a scale of provisions and substitutes to be allowed and served out to the crews of American vessels during a voyage.  By amendment, approved December 21, 1898, and made to take effect sixty days after passage, this scale or

schedule was materially changed and improved. The scale is specific in article and daily quantity, and is followed by a plain statement of substitutes that may be made under sail and in port. The concluding clause of the section reads thus: "The foregoing scale of provisions shall be inserted in every article of agreement, and shall not be reduced by any contract, except as above, and a copy of the same shall be posted in a conspicious place in the galley and in the forecastle of each vessel."

Section 4568 was amended by Sec. 14 of the foregoing act and made to read as follows:

"Sec. 4568. If, during a voyage, the allowance of any of the provisions which any seaman is entitled to under section forty-six hundred and twelve of the Revised Statutes is reduced except for any time during which such seaman wilfully and without sufficient cause refuses or neglects to perform his duty, or is lawfully under confinement for misconduct either on board or on shore; or if it shall be shown that any of such provisions are, or have been during the voyage, bad in quality or unfit for use, the seaman shall receive, by way of compensation for such reduction or bad quality, according to the time of its continuance, the following sums, to be paid to him in addition to and to be recoverable as wages:

" First. If his allowance is reduced by any quantity not exceeding one-third of the quantity specified by law, a sum not exceeding fifty cents a day.

" Second. If his allowance is reduced by more than one-third of such quantity, a sum not exceeding one dollar a day.

"Third. In respect to bad quality, a sum not exceeding one dollar a day.

" But if it is shown to the satisfaction of the court before which the case is tried that any provisions, the allowance of which has been reduced, could not be procured or supplied in sufficient quantities, or were unavoidably injured

or lost, or if by reason of its innate qualities any article becomes unfit for use and that proper and equivalent substitutes were supplied in lieu thereof, the court shall take such circumstances into consideration and shall modify or refuse compensation, as the justice of the case may require."

This amendment took effect February 19, 1899, eighteen days before the articles were signed; but it is certain that the libellants had no knowledge of its passage and were possessed of no information that would suggest inquiry.

On the day the vessel sailed the scale of the old law that had been superseded was posted in the forecastle, and remained there until the voyage ended at the city of Washington. The schooner proceeded to the coast of Africa, and on the return voyage stopped a few days at Barbadoes, and later at Trinidad, where it took on a cargo. At Barbadoes the sailors heard for the first time of the new scale and demanded its enforcement. Their conduct throughout was orderly and peaceable.

Without reviewing the testimony we agree with the learned justice who tried the cause, and heard each of the witnesses testify, that whilst the provisions furnished between Boston and Barbadoes were not in literal compliance with the terms of the old scale, they, at the same time, fell materially short of the requirements of the new. In the port of Barbadoes and the island of Trinidad, likewise, the quantity of fresh meat fell short by one half. Between Trinidad and Alexandria it is admitted by the master that there was some failure in the requirements of the new scale. On the other hand the four sailors testified to a material difference.

We agree, also, with the learned justice, that the law is remedial, was enacted for a beneficent purpose, and whilst not to be enforced with undue severity, should nevertheless be construed liberally so as to give its humane purpose full and practical effect, and cause it to be respected and obeyed by shipowners and masters.

16 Ct. App.—16

To the contention of the appellant, therefore, that the evidence of failure to observe the provision scale from day to day, is not certain enough to warrant the assessment of additional compensation, under the penal clauses of the statute, we can not agree.    Proof of the substantial failure to observe the requirements of the law, with such reasonable particularity of number of days as will enable the court to assess the compensation with reasonable certainty and fairness, would seem to be all that is necessary.    Under the strictness of proof contended for, the beneficial purpose of the statute would be seriously impaired.

Moreover, the difficulty in this case of putting finger upon the particular items of deficiency from day to day, between Boston and Barbadoes, like the failure of the sailors to demand anything in addition to the bill of fare furnished, is due chiefly, if not entirely, to their ignorance of the existence of the new law, and to the misleading scale posted for their information and guidance.

The legal presumption of knowledge of the newly enacted law by the owner and master of the schooner is, of course, sufficient foundation for the decree assessing damages for its violation.    But the existence of actual knowledge and of a deliberate intent to disobey the law are of material importance in determining the weight of the evidence of the owner and master, and the degree of rigor with which the latitude of discretion conferred upon the court in fixing the rate of extra compensation should be exercised.

Herein again, we agree with the court below, that they did have actual knowledge of the change in the law, and that their conduct can be explained on no other ground than indisposition to give it obedience.

In the first place, it seems incredible that the owner and master of a vessel in the port of Boston should not have heard of the enactment of so important a law affecting shipping.    Congress deemed the sixty days' postponement of its effect ample time for information to extend throughout the

entire Union.   One of the owners in testifying said : "The man who shipped my crew told me there was a new law passed for feeding the crew," and advised· procuring a copy. This man then went to the shipping commissioner and brought him a slip of paper with a list of articles, which he copied and took to the ship chandler to make his store list by.   The bill for these stores was offered and bears date March 8, the day before the crew signed the articles.

He, however, made no inquiry of the commissioner concerning the new law, and admitted that he did not inform the men of the new provision scale.   Now, it appears that the Bureau of Navigation, under date of January 14, 1899, issued a circular to collectors of customs and shipping commissioners, requesting them to bring to the notice of owners, agents and masters of American merchant vessels the provisions of the amended sections.   Those sections are copied in full in the circular with the provision scale complete. They were also notified that a new form of articles would be prepared as soon as practicable, and the following positive instruction was given: " Pending the issue of the new form of articles, a copy of this circular may be attached to and made part of the articles and may be posted in the galley and forecastle on and after February 20."   In the absence of evidence to the contrary the presumption would be that the shipping commissioner performed the duties imposed upon him by law and the orders of the Treasury Department of the United States.

The captain in the course of his testimony says that he found the new schedule—apparently this circular—in the box with his ship's papers when he took them to the office of the American consul at Barbadoes.   He had not seen the paper before and failed to account for its being among his papers.   Under the circumstances it is a reasonable inference that the. circular was furnished by the shipping commissioner for attachment to the articles or for posting as required.   The men, having discovered the existence of

the new law in the same port, demanded compliance with its scale, which demand, as we have seen, was partly complied with. This part compliance was under protest, and the master, after arrival in Alexandria, announced to the men his intention to deduct the extra cost of provisions from their wages.

The sole pretext for this conduct was the claim that the law only applied to vessels in the coastwise trade. For this contention, it is hardly necessary to say there was not the slightest foundation, and it is difficult to believe that it could have been made in good faith.

The award of additional compensation was at the rate of 75 cents per day for 195 days. The exact length of the voyage was 207 days. Why 12 of these days were excluded from the computation does not clearly appear; but if there was any error in the exclusion the benefit was that of the appellants. Under the statute the extra compensation allowed shall not exceed 50 cents per day if there has been a reduction in quantity of food of less than one-third fixed in the scale. If more than one-third, the allowance shall not exceed $1 per day.

When the food supply shall have been of bad quality, an additional allowance of not less than $1 per day may be made.

The testimony shows that there was a substantial departure from the scale throughout the entire voyage, and that for a considerable portion of it the reduction in quantity was more than one-third. There was also evidence showing that towards the conclusion of the voyage some of the provisions furnished were of bad quality.

Upon the whole, our conclusion is that the decree is a just one, and it will therefore be affirmed, with costs. *Affirmed.*